UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE<br><br>8403 Arlington Boulevard<br>Fairfax, Virginia 22031<br><br> Plaintiffs,<br><br> v.<br><br>MEGRANT CORPORATION<br><br>86 Otis Street<br>West Babylon, New York 11704<br><br>FARID MIRIAN<br><br>86 Otis Street<br>West Babylon, New York 11704<br><br>JASMINE MIRIAN<br><br>86 Otis Street<br>West Babylon, New York 11704<br><br> Defendants. | CIVIL ACTION NO. 1:18-cv-04870<br><br><br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>**U.S. Department of Labor**<br>**Attn: Assistant Solicitor**<br>**for Plan Benefits Security**<br>**200 Constitution Ave., N.W.**<br>**Washington, DC 20002**<br><br>**U.S. Department of Treasury**<br>**Attn: Secretary of the Treasury**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, D.C. 20220** |

# **COMPLAINT**

1

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers' National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMI" and together with NPF, ITI, SASMI, and SMOHIT referred to as "the Funds"), hereby complain as follows:

### Introduction

1. This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2) and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendants awarding delinquent contributions, a delinquent Exit Contribution, accrued interest, liquidated damages, audit fees, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Documents governing the Funds.

### Jurisdiction and Venue

2. Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e) and (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3. Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2) and Section 301(a) of the LMRA, 29 U.S.C. § 185(a), as Defendants reside in this district. Venue is also properly laid in this district because it is here that Defendants breached the relevant provisions of the collective bargaining agreement, and consequentially violated Section 515 of ERISA, 29 U.S.C. § 1145, because it is within this district that the relevant provisions of the collective bargaining agreement are required to be performed.

4. Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

## Parties

5. Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and

1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6. Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7. Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Section 3(1), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material

4

herein has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

8. Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT is a joint labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9. Plaintiff Board of Trustees, National Energy Management Institute Committee is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10. The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11. At all times relevant to this action, Defendant Megrant Corporation ("Megrant") has been an employer within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and has been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Megrant has been incorporated in the state of New York with a principal place of business at 86 Otis Street, West Babylon, New York 11704.

12. At all times relevant to this action, Defendant Farid Mirian was the Chief Executive Officer ("CEO") of Megrant. Upon information and belief, Farid Mirian resides at 52 Seneca Avenue, Dix Hills, New York 11746.

13. At all times relevant to this action, Defendant Jasmine Mirian was the President of Megrant. Upon information and belief, Jasmine Mirian resides at 86 Otis Street, West Babylon, New York 11704.

### The Parties and the Relevant Agreements

14. At all times relevant to this action, Megrant employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union, Local Union 28 ("Local 28" or the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

15. On November 15, 2015, Jasmine Mirian, President of Megrant, executed a Memorandum of Understanding on behalf of Megrant, in which Megrant agreed to comply with and be bound by the terms of the collective bargaining agreement between the Sheet Metal and Air Conditioning Contractors Association of New York City, Inc. SMACNA of Long Island, Inc. and the Union effective August 1, 2014 through July 31, 2017 (the "CBA" or "Agreement"). Pursuant to the Agreement, Megrent was obligated to submit monthly remittance reports and fringe

benefit contributions to NPF, ITI, SASMI, SMOHIT, and NEMIC for all hours worked or paid on behalf of Megrant's covered employees within the jurisdiction of Local 28.

16. Pursuant to the Agreement, Megrant was obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents"). Specifically, Article XII, B, Section 24(A) of the Agreement states "[t]he Employer agrees to be bound by the provisions of the Agreement and Declaration of Trust governing the various National Benefit Funds, and the interpretations thereof by the respective Board of Trustees of the Funds, as same as may be amended from time to time, and hereby acknowledge that such trust documents are incorporated herein by reference and are adopted by the Employer."

17. Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting system and the Funds rely on the honesty and accuracy of employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

18. The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

19. Article V, Section 3 of the governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds.

20. Article V, Section 6(a) of the governing Trust Agreement provides that a participating employer is liable for an Exit Contribution to the NPF if it: (i) ceases to have an

obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute but was not required to pay withdrawal liability under Title IV of ERISA.

21. Article V, Section 6(b) of the governing Trust Agreement provides that "[b]y agreeing to contribute, continuing to contribute, or continuing to be obligated to contribute, to the Fund, each Employer agrees to pay an Exit Contribution in accordance with Section 6. The Employer's obligation to pay an Exit Contribution under this Section 6 is independent of the Employer's collective bargaining agreement and continues to apply after the termination of the collective bargaining agreement (notwithstanding any language to the contrary in the collective bargaining agreement)."

22. An employer meeting the conditions described in Article V, Section 6(a) of the Trust Agreement shall pay an Exit Contribution to the NPF after the expiration of its collective bargaining agreement if it ceases to have an obligation to contribute to the NPF as a result of such expiration, and it did not enter into a successor collective bargaining agreement requiring contributions to the NPF.

23. The amount of an employer's Exit Contribution is equal to the amount of the employer's contributions due for the 36-month period preceding the month in which the employer ceased to have an obligation to contribute to the NPF.

24. An Exit Contribution is required to be paid to the NPF no later than the 20th day of the month following the month in which the Fund assessed the Exit Contribution by sending written demand for the payment of the employer's Exit Contribution.

25. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an

employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution.

### Megrant's Delinquencies

26. In October 2017, the Funds conducted a payroll audit of Megrant for the period of November 2016 through July 2017. The audit revealed that Megrant failed to make all the required contributions to the Funds, despite its obligation to do so under the Agreement, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

27. As of July 31, 2017, Megrant ceased to have an obligation to contribute to the NPF and had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA. As such, the NPF assessed Megrant an Exit Contribution in the amount of $58,190.91.

28. By letter dated April 30, 2018, the NPF notified Megrant of its required Exit Contribution and demanded payment by June 20, 2018 – the 20th of the month following the month in which the Fund assessed the Exit Contribution. To date, Megrant has not paid the Exit Contribution.

29. Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Megrant fails to timely submit the contractually required contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Megrant is required to pay the following amounts to the Funds:

    a. Interest on the delinquent contributions at a rate of 0.0233% per day (8.5% per annum), compounded daily;

  b. Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

  c. Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

  d. The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

## Count I
*Claim by Funds for Amounts Owed by Megrant Pursuant to Audit*

30. Plaintiffs reallege and incorporate Paragraphs 1 through 29.

31. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

32. Megrant is obligated, under the terms of the Agreement, to provide contributions to the Funds on behalf of its covered employees. Megrant has failed and refused to fulfill its contractual obligations for owed contributions and resulting interest and liquidated damages as demonstrated by a payroll audit conducted on Megrant by the Funds for the period of November 2016 through July 2017. The audit revealed that Megrant owes contributions, interest, and liquidated damages to the Funds. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Funds' governing documents.

33. The audit revealed that Megrant owes contributions in the amount of $8,163.35 for the period of November 2016 through July 2017. In addition to the contribution amounts found due, Megrant owes $1,612.12 in interest (through August 2, 2018), $1,632.69 in liquidated

10

damages, and $1,605.00 in audit testing fees. In total, Megrant owes $13,013.16 to the Funds for unpaid contributions, interest, late fees, and testing fees.

34. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g), Plaintiffs are entitled to recover all costs of this action from Megrant, including reasonable attorneys' fees and court costs.

35. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Megrant to obtain the outstanding contributions from Megrant. Megrant has not responded to the Funds' correspondence.

36. Megrant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' pension benefits, and other harm. Megrant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs request a judgment against Megrant for all amounts due to the Funds pursuant to the audit covering the period of November 2016 through July 2017 as follows:

1. Declare that Megrant is delinquent in remitting owed contributions to the Funds pursuant to the Agreement;

2. Award Plaintiffs on behalf of the Funds a judgment for Megrant's delinquent contributions found to be due by the audit for the period of November 2016 through July 2017 in the total amount of $13,013.16

3. Enter judgment against Megrant for interest on all delinquent contributions at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment;

4. Enter judgment against Megrant for liquidated damages in an amount equal to the greater of interest on the delinquent contributions calculated at the above rate, or 20% of the delinquent contributions;

5. Enter judgment for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

6. Award such other relief as the Court deems just and proper.

## Count II
*Claim by NPF for Exit Contribution Owed by Megrant*

37. Plaintiffs reallege and incorporate Paragraphs 1 through 36

38. This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

39. Megrant is obligated under the terms of the CBA, Trust Agreement, and Section 515 of ERISA to pay an Exit Contribution if Megrant (i) ceases to have an obligation to contribute to the NPF, and (ii) had an event of withdrawal under Title IV of ERISA as a result of the cessation of its obligation to contribute, but was not required to pay withdrawal liability under Title IV of ERISA. The Exit Contribution is equal to the contributions due from Megrant for the 36-month period preceding the month in which it ceased to have an obligation to contribute to the NPF.

40. Pursuant to Article V, Section 6 of the Trust Agreement, Megrant's obligation is independent of the CBA and continues to apply after its termination notwithstanding any language to the contrary.

41. As of July 31, 2017 Megrant ceased to have an obligation to contribute to the NPF because the Agreement expired and Megrant did not enter into a successor collective bargaining agreement. This constituted a withdrawal under Title IV of ERISA, but Megrant was not required

to pay withdrawal liability under Title IV of ERISA. As such, the NPF assessed an Exit Contribution against Megrant in the amount of $58,190.91.

42. To date, Megrant has failed to pay any portion of the Exit Contribution due to the Fund, despite its obligation to do so under the CBA, the Trust Agreement, and Section 515 of ERISA, 29 U.S.C. § 1145.

43. Pursuant to Article V, Section 6(g) of the Trust Agreement, an Exit Contribution is a type of contribution that an employer is obligated to pay under the Trust Agreement. As such, an employer's failure to make an Exit Contribution constitutes a delinquency and is treated in the same manner as any other delinquent contribution. Accordingly, Megrant owes interest on the unpaid Exit Contribution in the amount of $585.88 (through August 2, 2018) and liquidated damages in the amount of $11,638.18. While the Exit Contribution remains unpaid, interest continues to accrue on the delinquent Exit Contribution.

44. Under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement, Plaintiffs are entitled to recover all costs of this action from Megrant, including reasonable attorneys' fees and court costs.

45. Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Megrant to obtain the outstanding Exit Contribution from Megrant. Megrant has not responded to the Funds' correspondence.

46. Megrant's continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the NPF, endangered the eligibility of covered members' pension benefits, and other harm. Megrant's failure and refusal to comply with its obligations creates an atmosphere in the industry that encourages other employers to do the same

**WHEREFORE**, Plaintiffs request a judgment on behalf of the NPF against Megrant for the Exit Contribution as follows:

1. Declare that Megrant is delinquent in remitting the owed Exit Contribution to the NPF pursuant to the CBA and Trust Agreement;

2. Award NPF a judgment for Megrant's delinquent Exit Contribution in the amount of $58,190.91;

3. Enter judgment against Megrant for interest on the Exit Contribution at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment;

4. Enter judgment against Megrant for liquidated damages in an amount equal to the greater of interest on the Exit Contribution calculated at the above rate, or 20% of the Exit Contribution;

5. Enter judgment for all attorneys' fees and costs incurred by the NPF in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

6. Award such other relief as the Court deems just and proper.

Respectfully submitted,

\_\_\_\_/s/ Richard S. Edelman_____
Richard S. Edelman
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, N.W. Suite 400
Washington, DC 20036
(202) 783-0010
(202) 783-6088 facsimile
redelman@mooneygreen.com
Counsel for Plaintiffs

Dated: August 27, 2018

**CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)**

I hereby certify that on this 27th day of August 2018, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR INJUNCTIVE RELIEF, ATTORNEYS FEES, AND COSTS was served via certified mail on:

U.S. Department of Labor
Attn: Assistant Solicitor for Plan Benefits Security
200 Constitution Ave., N.W.
Washington, DC 20002

U.S. Department of Treasury
Attn: Secretary of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                                                        /s/ Richard S. Edelman
                                                       Richard S. Edelman